## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KAREN BARKES individually; TINA )
GROSSMAN as next )
friend of BRITTANY BARKES; TINA )
GROSSMAN as next friend of ALEXANDRA )
BARKES; and KAREN BARKES as administratrix )
of the ESTATE OF CHRISTOPHER BARKES, )
)
   Plaintiffs, )
)
v. )   Civil Action No.
)
FIRST CORRECTIONAL MEDICAL, )   JURY TRIAL DEMANDED
INC.; STANLEY TAYLOR; RAPHAEL )
WILLIAMS; CERTAIN UNKNOWN )
INDIVIDUAL EMPLOYEES OF THE STATE OF )
DELAWARE DEPARTMENT OF )
CORRECTION; CERTAIN UNKNOWN )
INDIVIDUAL EMPLOYEES )
OF FIRST CORRECTIONAL MEDICAL, )
INC.; and STATE OF DELAWARE )
DEPARTMENT OF CORRECTION, )
)
   Defendants. )

## COMPLAINT

### Parties

1. Plaintiff Karen Barkes individually is, and at all times relevant hereto was, a resident of Wilmington, Delaware, and was the wife of decedent Christopher Barkes (who is hereinafter sometimes referred to as "Mr. Barkes") at the time of the death of Christopher Barkes.

2. Plaintiff Tina Grossman is the mother and next friend of Brittany A. Barkes (hereinafter sometimes referred to as "Brittany," date of birth August 30, 1989) and Alexandra

M. Barkes (hereinafter sometimes referred to as "Alexandra," date of birth March 9, 1993), who are the children of Christopher Barkes.

3.    Plaintiff Karen Barkes as Administratrix of the Estate of Christopher Barkes has been appointed Administratrix of the Estate of Christopher Barkes by the New Castle County Register of Wills.

4.    Defendant Stanley Taylor is the Commissioner of Correction for the State of Delaware, and in that capacity is the Chief Officer of the Department of Correction (the department will hereinafter sometimes be referred to as the "DOC."

5.    Defendant Raphael Williams is and was at all times relevant hereto the Warden of the Howard R. Young Correctional Institution (which was formerly often referred to as "Gander Hill," and which will hereinafter be referred to as "HRYCI").

6.    Defendants, unknown individual employees of the DOC, were, on information and belief, involved in the care and custody of Christopher Barkes, either directly or indirectly by virtue of their obligations to properly administer such care and custody, at relevant times hereto.

7.    Defendant, State of Delaware Department of Correction, is a subdivision of the State of Delaware.

8.    Defendant, First Correctional Medical, Inc. (hereinafter sometimes referred to as "FCM"), is, on information and belief, a corporation responsible, at all times relevant hereto, for the performance of medical services within HRYCI pursuant to a contract with the State of Delaware.

9.     Defendants, unknown individual employees of FCM, were, on information and belief, involved in the care and custody of Christopher Barkes, either directly or indirectly by virtue of their obligations to properly administer such care and custody, at relevant times hereto.

### Jurisdiction

10.     The United States District Court for the District of Delaware has jurisdiction over the parties and the claims by virtue of the pendency of a federal claim under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343, and under the principles of ancillary and pendent jurisdiction as well as the supplemental jurisdiction provisions of 28 U.S.C. § 1367.

### Facts

11.     Christopher Barkes, whose date of birth was December 12, 1966, was found to have committed suicide at age 37 on or about November 14, 2004, while incarcerated at HRYCI.

12.     Seven years prior to his suicide, in 1997, Mr. Barkes was involved in an automobile accident while under the influence of alcohol, which accident resulted in the deaths of two other involved parties.

13.     As a result of his involvement in the aforesaid motor vehicle accident, Mr. Barkes pleaded guilty to two counts of vehicular homicide and was sentenced to two years in prison to be followed by an extended period of probation.

14.     Mr. Barkes was deeply impacted by the tragic auto accident identified above; psychological reports relating to his frame of mind, generated as a result of treatment he received in the years after the vehicular homicide, indicate that he was wracked with extreme guilt over the deaths that had resulted from the accident, and he had been diagnosed as suffering from post-traumatic stress disorder resulting from that accident.

3

15.    As a result of the post-traumatic stress disorder and related guilt, depression, and anxiety, certain alcohol and drug problems of Mr. Barkes were exacerbated, and in November of 2003 he attempted suicide by overdosing on pills, although he survived.

16.    On information and belief, Mr. Barkes attempted suicide on at least one other occasion while incarcerated at HRYCI.

17.    In February of 2004, as part of a sentencing order related to, *inter alia*, certain violations of his probation, Mr. Barkes was ordered as follows by the Family Court of the State of Delaware: to continue certain psychiatric day treatment services he was obtaining from Psychotherapeutic Services, Inc.; to attend at least five meetings of Alcoholics Anonymous per week; to be evaluated for emotional and/or psychological problems; and to take such mental health medication as was prescribed.

18.    On September 10, 2004 while receiving care at Chrisitana Care Hospital, Mr. Barkes tried to kill himself using his IV tubing.  Mr. Barkes' probation officers were notified.

19.    On November 13, 2004 Christopher Barkes was incarcerated at HRYCI for loitering, in violation of his probation.

20.    During the initial intake of Christopher Barkes, on November 13, 2004, employees of defendant FCM noted that Christopher Barkes took the following medications: Depakote XR, Seroquel and Effexor XR, whose clinical use is to treat depression and bipolar disorder.

21.    Christopher Barkes was not given any of the above-listed medications by FCM personnel on November 13, 2004 or thereafter.

22.    The intake form prepared at the time of Mr. Barkes' entry into HRYCI, which was signed by a member of the FCM intake nursing staff, was checked "yes" next to the inquiry, "Have you ever attempted suicide?"

23.    The initial period of any incarceration is often a critical time for detecting potential suicides, as noted in the Program Statement of the United States Bureau of Prisons relating to suicide prevention.

24.    Upon information and belief, instead of double-bunking Christopher Barkes (which is to say, housing him with a cellmate) or placing him in a suicide watch cell or "Ram room", Christopher Barkes was housed alone in cell F-122.

25.    With regard to incarcerated individuals who have a history of suicidal ideation and are believed to be suicidal, the National Commission on Correctional Health Care ("NCCHC") calls for double-bunking and constant supervision.

26.    Upon information and belief, Christopher Barkes was not placed under constant supervision nor was his status checked at regularly-scheduled intervals sufficient to prevent his suicide.

27.    Upon information and belief, defendants either made provision to Christopher Barkes, or authorized the provision to Christopher Barkes, or failed to prevent the provision to Christopher Barkes, of bedding (such as bed sheets and linens) and/or other items that could be used by a suicidal inmate to harm himself.

28.    Upon information and belief, at approximately 11:40 a.m. on November 14, 2004, Christopher Barkes was found unconscious in his cell by prison officials, who determined that he had hung himself with bedsheets.

29.    Prison officials and/or FCM personnel attempted to revive Christopher Barkes unsuccessfully.

30.    Christopher Barkes was thereafter transferred to Christiana Hospital.

31.    The ER referral completed by FCM and/or DOC personnel relating to the transfer of inmate Christopher Barkes to Christiana Hospital expressly noted that Mr. Barkes had a history of bipolar disorder.

32.    Christopher Barkes was pronounced dead in Christiana Hospital on November 14, 2004.

## COUNT I

### Violation of Civil Rights under Color of State Law, 42 U.S.C. § 1983 – Cruel and Unusual Punishment (by Karen Barkes as Administratrix against all individual defendants and FCM)

33.    Paragraphs 1 to 32 are restated as if more fully set forth herein.

34.    The vulnerability of Christopher Barkes to suicide constituted a serious medical need of which defendants knew or should have known, and the actions and/or inactions of defendants, under color of state law, in addressing or failing to address that need, constituted deliberate indifference which could be expected to lead to substantial and unnecessary suffering, injury, and/or death, and which did in fact lead to the death of Mr. Barkes.

35.    As a result of the wrongful actions of the defendants, Mr. Barkes suffered attendant physical injuries, mental anguish, pain and suffering, and death, and was deprived of his right to life and his right to be free from cruel and unusual punishment, for which plaintiff Karen Barkes as Administratrix now seeks compensation.

## COUNT II

## Violation of Civil Rights under Color of State Law, 42 U.S.C. § 1983 – Failure to train and/or maintenance of wrongful customs, practices and polices (by Karen Barkes as Administratrix against FCM as a person and as a state actor, and against the individual FCM defendants)

36.     Paragraphs 1-35 are restated as if more fully set forth herein.

37.     In performing its medical services for the DOC, FCM and the individual FCM defendants were state actors performing state functions under color of state law.

38.     The death of Christopher Barkes was the direct result of the customs, practices, policies and procedures of FCM and the individual FCM defendants, including but not limited to: a failure to properly train and supervise FCM personnel so as to properly recognize suicidal inmates and how to properly care for inmates identified as making previous attempts on their life, and/or a failure to institute appropriate procedures for the timely transmission of important medical information to appropriate personnel.

39.     The aforesaid actions of FCM and the individual FCM defendants amounts to deliberate indifference to the rights of inmates, including the rights of Mr. Barkes.

40.     As a result of the wrongful actions of the defendants, Mr. Barkes suffered attendant physical injuries, mental anguish, pain and suffering, and death, and was deprived of his right to life and his right to be free from cruel and unusual punishment, for which plaintiff Karen Barkes as Administratrix now seeks compensation.

## COUNT III

### Violation of Civil Rights under Color of State Law, 42 U.S.C. § 1983– Failure to train and/or maintenance of wrongful customs, practices and polices (by Karen Barkes as Administratrix against the State of Delaware Department of Corrections and the individual defendant employees of the DOC)

41.     Paragraphs 1 to 40 are restated as if more fully set forth herein.

42.     The death of Christopher Barkes was the direct result of the customs, practices, policies and procedures of defendant Stanley Taylor, defendant Raphael Williams, the individual DOC defendants, and the defendant State of Delaware Department of Correction, including but not limited to: a failure to properly train and supervise DOC personnel so as to properly recognize suicidal inmates and how to properly care for inmates identified as making previous attempts on their life, and/or a failure to institute appropriate procedures for the timely transmission of important medical information to appropriate personnel.

43.     The aforesaid actions of defendants constitute deliberate indifference to the rights of inmates who come into contact with employees of the DOC and FCM, including the rights of Mr. Barkes.

44.     As a direct and proximate result of the actions of the Defendants, Christopher Barkes suffered attendant physical injuries, mental anguish, pain and suffering, and death, and was deprived of his right to life and his right to be free from cruel and unusual punishment, for which plaintiff Karen Barkes as Administratrix now seeks compensation.

## COUNT IV

### Wrongful Death under 10 Del. C. § 3724 (by Karen Barkes individually and Tina Grossman as next friend of Alexandra and Brittany Barkes, against FCM and the individual defendants)

45.     Paragraphs 1-44 are restated as if more fully set forth herein.

46.    The aforesaid actions of the defendants caused the wrongful death of Christopher Barkes.

47.    Plaintiffs are authorized to recover for the damages they have suffered as a result of the wrongful death of Christopher Barkes pursuant to the terms of 10 Del. C. § 3724, and they have suffered severe damages as identified thereunder, including but not limited to the loss of companionship and support of their husband and/or father, Christopher Barkes, with attendant and severe emotional anguish.

## COUNT V

### Survival action under 10 Del. C. § 3701 for medical malpractice (by Karen Barkes as Administratrix against FCM and the individual FCM defendants)

48.    Paragraphs 1-44 are restated as if more fully set forth herein.

49.    The aforesaid actions of the defendants constituted medical malpractice, causing great pain and suffering, physical injury, and death to Christopher Barkes.

50.    Plaintiff Karen Barkes as Administratrix is authorized to recover for the damages suffered by Christopher Barkes as a result of the medical malpractice of the defendants, pursuant to 10 Del. C. § 3701.


**WHEREFORE,** plaintiffs demand that judgment be entered in their favor against defendants on the above claims, including awards of compensatory damages, punitive damages, costs of suit, interest, attorneys' fees under 42 U.S.C. § 1988 and any other appropriate or relevant statutory or common law basis, and such other and further relief as this Court may deem appropriate.

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680
jmartin@margolisedelstein.com
Attorneys for Plaintiff

DATE: February 16, 2006

℈JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)  PLAINTIFFS**
Karen Barkes et al.

**DEFENDANTS**
First Correctional Medical Inc. et al.

**(b)** County of Residence of First Listed Plaintiff    New Castle
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Pima County, Arizona
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jeffrey K. Martin (302) 777-4680
Margolis Edelstein
1509 Gilpin Avenue, Wilmington DE 19806

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1983
Brief description of cause:
Wrongful Death

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions):
JUDGE                                       DOCKET NUMBER

DATE    2/16/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE