IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAREN BARKES individually; TINA )<br>GROSSMAN as next )<br>friend of BRITTANY BARKES; TINA )<br>GROSSMAN as next friend of ALEXANDER )<br>BARKES; and KAREN BARKES as administratrix )<br>of the ESTATE OF CHRISTOPHER BARKES, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FIRST CORRECTIONAL MEDICAL )<br>CENTER; STANLEY TAYLOR; RAPHAEL )<br>WILLIAMS; CERTAIN UNKNOWN )<br>INDIVIDUAL EMPLOYEES OF THE STATE OF )<br>DELAWARE DEPARTMENT OF )<br>CORRECTION; CERTAIN UNKNOWN )<br>INDIVIDUAL EMPLOYEES )<br>OF FIRST CORRECTIONAL MEDICAL )<br>CENTER; and STATE OF DELAWARE )<br>DEPARTMENT OF CORRECTION, )<br>)<br>Defendants. ) | Civil Action No. 06-104 JJF<br><br>JURY TRIAL DEMANDED |

**REPLY MEMORANDUM OF PLAINTIFFS IN SUPPORT OF MOTION FOR**

**REARGUMENT**

The Plaintiffs file this "Reply Memorandum of Plaintiffs in Support of Motion for Reargument" in reply to "State Defendants' Response in Opposition to Plaintiffs' Motion for Reargument" (D.I. #65). We will herein refer to the State Defendants' response (i.e. D.I. # 65) as the "State's Reargument Response."

The standard governing a motion for reargument or reconsideration was recently stated in a manner somewhat different from that identified by the State Defendants in the State's Reargument Response. In particular:

> In order to succeed, the party requesting reconsideration must show that at least one of the following criteria applies: (1) a change in the controlling law; (2) availability of new evidence not available when the Court made its decision; or (3) need to correct a clear error of law or fact or to prevent manifest injustice.

Dobrich v. The Indian River School Dist., 432 F.Supp.2d 445, 448 (D.Del. 2006) citing Max's Seafood Café by Lou Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3rd Cir. 1999); see also Pell v. E.I. Dupont de Nemours & Co., Inc., 231 F.R.D. 186, 188 (D.Del. 2005).

Plaintiffs' arguments for reconsideration of the summary judgment entered in this case are set forth in our underlying motion, D.I. #64, and need not be restated. However, Plaintiffs do wish to emphasize the following points in reply to the response filed by the State Defendants.

I.   **With regard to the different versions of the suicide prevention policy**

At the time of filing this Reply, Plaintiffs still do not know which, if any, suicide prevention policy was in place on the date of the intake for Christopher Barkes on November 13, 2004.

Plaintiffs discussed the confusion that exists on this key issue at length in the Motion for Reargument. That discussion need not be repeated here. But for the State Defendants to summarily dismiss that discussion as relating to nothing more than "page numbering discrepancies" (as they do at page 3 of the State's Reargument Response)[1] entirely misses the point. And that point is rather simple: that because the State Defendants do not, even now, have the capacity to consistently represent the various documents that they have put forth as constituting the applicable suicide prevention policy (i.e. SOP 190.04), the record remains incomplete.

---

[1] State Defendants also attempt to distance themselves from responsibility for the confusion, implying that one admitted misidentification was caused by their counsel's paralegal (page 3 of the State's Reargument Response) and stating further that the discepancies amount to a mere "clerical error" (pages 2, 3, and 4 of the State's Reargument Response).

2

As an additional example of the continuing confusion (in addition, that is, to the discussion in our Motion for Reargument), Plaintiffs draw this Court's attention to the middle paragraph of page 3 of the State's Reargument Response. In this paragraph, the State Defendants agree that the inapplicable May 2005 policy (inapplicable because it postdated the suicide by approximately six months; it is Bates-numbered D-00514-517) was "misidentified" as the applicable policy in an August 2007 letter from their counsel. State Defendants then go on to state that the "actual discovery responses which, unlike the letter, are part of the actual record in this case, make clear that the version which is Bates-stamped D00461-464 is the version which was actually in effect in November 2004." This is a remarkable statement for State Defendants to make, because *they themselves*, in their Opening Brief in support of their motion for summary judgment (D.I. #50) referenced as the applicable policy what they are now calling the *later revised* policy (i.e. the May 2005 policy, Bates-numbered D-00514-517 as discussed in our Motion for Reargument), first on page 9 and then again on page 22. And these incorrect reference by State Defendants occurred *after* the discovery response which they now contend "make[s] clear" that the correct version was in fact the version at D-OO461-464. It was, in fact, clear to neither the State Defendants nor the Plaintiffs, and it remains unclear to this very day. We submit that the only way to clear up this confusion is to grant Plaintiffs an opportunity to, at the least, conduct discovery on this and related issues.[2]

Moreover, State Defendants now contend that the difference in language between D-000461-464 and D-00514-517 is "of no consequence to this case, as it relates to the housing of 'suicidal' inmates. Christopher Barkes was never identified as a 'suicidal' inmate at any time

---

[2] State Defendants, for example, identify what they "would aver" to be the missing page "5of 5," suggesting that such page was "blank" (see footnote 1 on page 3 of the State's Reargument Response). Plaintiffs respectfully submit that such a proffer in the absence of sworn testimony is not sufficient and must be disregarded by the Court, and further submit that this is precisely the sort of issue that requires clarification through discovery of appropriate Department of Correction or other personnel.

3

while he was incarcerated. Rather, based upon the nurse's observations and the history he provided at intake in the mental health assessment, Barkes was classified and housed as an ordinary detainee." These are amazingly bold and misleading statements. First of all, the language that appears in D-00461-464 that is omitted in D-00514-517 could not be more consequential in this case. As we noted in the Motion for Reargument, that language is as follows: "Suicidal offenders are to be placed in a close observation cell. They must be supervised under visible observation by security 24 hours a day." This language is directly relevant to the issues presented by this case: Christopher Barkes, after all, committed suicide less than twenty-four hours after his re-incarceration. And for the State Defendants to rely on the fact that Christopher Barkes was never "identified" as suicidal in the flawed intake procedure revealed in this case is to take the foundation of *our* argument and twist it to suit their *own* purposes: to reiterate, we have asserted that the intake person (only an LPN, i.e. "licensed practical nurse") was not qualified to evaluate Mr. Barkes, and where Mr. Barkes self-identified himself (on his intake form) as someone who had recently attempted suicide, he was *by definition, admission, and personal history* a person who had demonstrated suicidal behavior, and a policy needed to be in place to treat him as such *until a proper evaluation by a qualified evaluator* could be made. In suggesting that Mr. Barkes had not been "identified" as suicidal, the State Defendants rely upon their own failure to properly identify him as the justification for their further failure to properly house him in a "close observation cell" as required by the terms of the policy (i.e. the D-00464-467 policy) that they now assert (with no indication of the Department of Correction official or officials who provided this corroboration) is the correct policy.

Moreover, these matters were brought to the attention of State Defendants' counsel in an effort to resolve the confusion in a timely fashion, albeit unsuccessfully. While their counsel now

4

states, at pages 3 to 4 of the State's Reargument Response, that she "never received" the October 12, 2007 letter on this point (referenced in Plaintiffs' Appendix, D.I. #55 at B-20), the undersigned counsel Jeffrey K. Martin takes the opposite view. First, Mr. Martin averred by affidavit (see page B-5 of the Plaintiffs' appendix in opposition to summary judgment, D.I. #55) that the letter was, in fact, sent to defense counsel. Second, he notes that there was no denial by State Defendants' counsel as to her receipt of this letter in her Reply Brief on summary judgment (D.I. #56) even though the letter was identified and discussed in Plaintiffs' Answering Brief and included (as noted above) in Plaintiffs' appendix. Nor was there any response in the Reply Brief to the affidavit filed by Mr. Martin indicating that the paralegal assistants for both opposing attorneys discussed the request for clarification set forth in the October 12, 2007 letter after it was made. Indeed, attached hereto is the affidavit of the paralegal for Plaintiffs' attorney wherein she sets forth the exact dates and times when she spoke with the State's paralegal regarding those issues.

The standard for granting a motion for reconsideration set forth above identifies three grounds. As to the first ground, we do not assert that there has been any change in the controlling law since the decision issued by the Court. But either of the other two grounds compel reargument and reconsideration of the issues presented herein. The continuing confusion over the terms of the suicide prevention policy applicable on the day of Mr. Barkes's suicide (new evidence of which has appeared throughout the briefing process on summary judgment, as set forth in the instant filing and the Motion for Reargument) compels both re-examination of the record and further discovery to uncover the truth. Moreover, the ongoing inconsistencies of fact with regard to the true content of the correct policy in place at the relevant time raise the spectre of a manifest injustice. Where a genuine issue of fact exists over a material issue in the case,

5

granting a motion for reargument or reconsideration is appropriate, see for example <u>Pell v. E.I. Dupont de Nemours & Co., Inc.</u>, 231 F.R.D. 186, 190 (D.Del. 2005).

Finally, for all of the reasons set forth in Plaintiffs' Answering Brief, the State Defendants remain individually liable for their actions, with no recourse to immunity provided by the Eleventh Amendment to the U.S. Constitution or <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978).

When one considers the inconsistencies of the representations made herein by the State Defendants, even with the twin benefits of ample time during the litigation process to identify the correct policy and a strong motivation (i.e. the defense of pending claims) to provide a consistent record, one is left to ponder the following: if the State Defendants cannot consistently and conclusively identify the correct policy *now*, then how could the Department of Correction personnel on the scene act intelligently and confidently at the time of Mr. Barkes's suicide? We submit that the answer to that question is that, due to flawed policies and the lack of a qualified evaluator, they could not and did not act intelligently and confidently to prevent the suicide of Mr. Barkes.

## II. With regard to the USDOJ documents

Plaintiffs stand by their arguments in the Motion for Reargument with regard to the USDOJ documents, and will not repeat those arguments herein. In reply to the State's Reargument Response on this issue, however, Plaintiffs note the following: the USDOJ materials were supplied to the State Defendants as supplemental discovery when they became relevant, and they became relevant and necessary for the purpose of responding to the arguments made in the Opening Brief on summary judgment. These documents were not merely disclosed

"by the simple act of attaching new, previously unseen documents" (see characterization in footnote 2 at page 6 of the State's Reargument Response) to Plaintiffs' summary judgment appendix, but were in fact provided as a supplemental discovery response, see D.I. #57. Moreover, it is disingenuous in the extreme for the State Defendants to characterize these documents as "previously unseen," in that the documents were in the first instance *prepared for and supplied to* the State of Delaware Department of Correction by the USDOJ. The State Defendants should, presumably, be intimately familiar with these documents.

### III. Conclusion

Plaintiffs claim in this action that the suicide of decedent inmate Christopher Barkes was attributable to the wrongful actions or inactions of Defendants. In the Motion for Reargument Plaintiffs claim, inter alia, that the State Defendants have been unable to consistently identify the applicable suicide prevention policy in place at the relevant time. We contend that the reason that an inmate who identified a recent suicide attempt on a prison intake form is allowed *by prison policies* to be alone during the first twenty-four hours of his incarceration is perhaps the same reason that prison authorities cannot seem to identify with consistency and clarity the documents and text establishing the "suicide prevention" policy that was in place at the relevant time: a condescending and cavalier attitude towards the duty of corrections personnel to protect a depressed prisoner from an ever-present enemy - his own hand. It is this attitude, prevalent within the Department of Correction, that led directly to Mr. Barkes's suicide, and that drives this civil action.

Plaintiff Karen Barkes, widow of decedent Christopher Barkes, when asked at her deposition whether she was concerned that Mr. Barkes would commit suicide when she learned that he had been re-incarcerated on November 13, 2004, could not have stated her prevailing

feeling more plainly: "I thought he couldn't kill himself because he was in jail." That Mr. Barkes, a self-identified (on the intake form) potential-suicide, is now dead is a tragedy; that he was left alone during the first 21 hours of his incarceration is a travesty. And that a jury should have the opportunity to measure the malfeasance of the defendants in this matter is a manifest necessity.

For all of the reasons hereinabove stated, and previously set forth in the Motion for Reargument, D.I. #64, it is respectfully requested that the decision granting summary judgment in favor of the State Defendants be set aside and the matter allowed to proceed to trial.

DATE: April 2, 2008

By: _____
Jeffrey K. Martin, Esq. (#2407)
Martin & Wilson, P.A.
1508 Pennsylvania Ave.
Wilmington, Delaware 19806
(302) 777-4681
jmartin@martinandwilson.com

and

By: _____
Herbert G. Feuerhake, Esq. (#2590)
521 West Street
Wilmington, Delaware 19801
(302) 658-6101
herblaw@verizonmail.com

Attorneys for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KAREN BARKES individually; TINA )
GROSSMAN as next )
friend of BRITTANY BARKES; TINA )
GROSSMAN as next friend of ALEXANDRA )
BARKES; and KAREN BARKES as administratrix )
of the ESTATE OF CHRISTOPHER BARKES, )
                                                                         )
      Plaintiffs, )
                                                                         )
v.                                                             )    C.A. No. 06-cv-00104(JJF)
                                                            )
FIRST CORRECTIONAL MEDICAL, )    JURY TRIAL DEMANDED
INC.; STANLEY TAYLOR; RAPHAEL )
WILLIAMS; CERTAIN UNKNOWN )
INDIVIDUALEMPLOYEES OF THE STATE OF )
DELAWARE DEPARTMENT OF )
CORRECTION; CERTAIN UNKNOWN )
INDIVIDUAL EMPLOYEES )
OF FIRST CORRECTIONAL MEDICAL, )
INC.; and STATE OF DELAWARE )
DEPARTMENT OF CORRECTION, )
                                                            )
     Defendants. )

## AFFIDAVIT OF BRENNA A. DOLPHIN

STATE OF DELAWARE   :
                               :   SS.
NEW CASTLE COUNTY   :

     I, BRENNA A. DOLPHIN, being duly sworn according to law, depose and state that the information contained herein is based on my own personal knowledge and is true and correct:

     1.    I am a resident of the state of Delaware and graduated from Franklin & Marshall College in May 2007.

2. I have been employed as a paralegal with the law firm of Martin & Wilson, P.A. continuously since August 2007.

3. I recall the letter set forth in B-20, an October 12, 2007 letter, from Jeffery K. Martin, Esquire to Deputy Attorney General Stephani Ballard inquiring as to the identity of the suicide prevention policy in place in November 2004 as well as a request for the records relating to decedent's admission intake to prison in March 2004.

4. As a result of the letter of October 12, 2007, I attempted contact with Jennifer Mitchell, paralegal for Deputy Attorney General Ballard on several occasions following October 12, 2007.

5. On October 31, 2007 at 9:55 am, I contacted Ms. Mitchell at (302) 577-8416 and spoke with her regarding the prison's suicide policy. She replied to me that she had been out of the office for a couple of days and needed to check with Deputy Attorney General Ballard.

6. On November 1, 2007 I sent an e-mail to Ms. Mitchell requesting the prison suicide protocol as well as the medical intake form for decedent's March 2004 incarceration. As a result of same, we discussed them briefly.

*Brenna A. Dolphin*
BRENNA A. DOLPHIN

SWORN AND SUBSCRIBED before me this 2ND day of April, 2008.

_____
NOTARY PUBLIC

TIMOTHY J. WILSON, ESQ.
NOTARY PUBLIC
DELAWARE ATTORNEY
ID # 4220
DELAWARE ATTORNEY AT LAW