# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

KAREN BARKES individually; TINA )
GROSSMAN as next )
friend of BRITTANY BARKES; TINA )
GROSSMAN as next friend of ALEXANDRA )
BARKES; and KAREN BARKES as administratrix )
of the ESTATE OF CHRISTOPHER BARKES, )
                                    )
        Plaintiffs,                  )
                                    )
v.                                   )    C.A. No. 06-cv-00104(JJF)
                                    )
FIRST CORRECTIONAL MEDICAL,          )    JURY TRIAL DEMANDED
INC.; STANLEY TAYLOR; RAPHAEL        )
WILLIAMS; CERTAIN UNKNOWN            )
INDIVIDUAL EMPLOYEES OF THE STATE OF )
DELAWARE DEPARTMENT OF               )
CORRECTION; CERTAIN UNKNOWN          )
INDIVIDUAL EMPLOYEES                 )
OF FIRST CORRECTIONAL MEDICAL,       )
INC.; and STATE OF DELAWARE          )
DEPARTMENT OF CORRECTION,            )
                                    )
        Defendants.                  )

## AMENDED COMPLAINT

### Parties

1.  Plaintiff Karen Barkes individually is, and at all times relevant hereto was, a resident of Wilmington, Delaware, and was the wife of decedent Christopher Barkes (who is hereinafter sometimes referred to as "Mr. Barkes") at the time of the death of Christopher Barkes.

2.  Plaintiff Tina Grossman is the mother and next friend of Brittany A. Barkes (hereinafter sometimes referred to as "Brittany," date of birth August 30, 1989) and Alexandra

M. Barkes (hereinafter sometimes referred to as "Alexandra," date of birth March 9, 1993), who are the children of Christopher Barkes.

3. Plaintiff Karen Barkes as Administratrix of the Estate of Christopher Barkes has been appointed Administratrix of the Estate of Christopher Barkes by the New Castle County Register of Wills.

4. Defendant Stanley Taylor is the Commissioner of Correction for the State of Delaware, and in that capacity is the Chief Officer of the Department of Correction (the department will hereinafter sometimes be referred to as the "DOC."

5. Defendant Raphael Williams is and was at all times relevant hereto the Warden of the Howard R. Young Correctional Institution (which was formerly often referred to as "Gander Hill," and which will hereinafter be referred to as "HRYCI").

6. Defendants, unknown individual employees of the DOC, were, on information and belief, involved in the care and custody of Christopher Barkes, either directly or indirectly by virtue of their obligations to properly administer such care and custody, at relevant times hereto.

7. Defendant, State of Delaware Department of Correction, is a subdivision of the State of Delaware.

8. Defendant, First Correctional Medical, Inc. (hereinafter sometimes referred to as "FCM"), is, on information and belief, a corporation responsible, at all times relevant hereto, for the performance of medical services within HRYCI pursuant to a contract with the State of Delaware.

9. Defendants, unknown individual employees of FCM, were, on information and belief, involved in the care and custody of Christopher Barkes, either directly or indirectly by virtue of their obligations to properly administer such care and custody, at relevant times hereto.

**Jurisdiction**

10. The United States District Court for the District of Delaware has jurisdiction over the parties and the claims by virtue of the pendency of a federal claim under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343, and under the principles of ancillary and pendent jurisdiction as well as the supplemental jurisdiction provisions of 28 U.S.C. § 1367.

**Facts**

11. Christopher Barkes, whose date of birth was December 12, 1966, was found to have committed suicide at age 37 on or about November 14, 2004, while incarcerated at HRYCI.

12. Seven years prior to his suicide, in 1997, Mr. Barkes was involved in an automobile accident while under the influence of alcohol, which accident resulted in the deaths of two other involved parties.

13. As a result of his involvement in the aforesaid motor vehicle accident, Mr. Barkes pleaded guilty to two counts of vehicular homicide and was sentenced to two years in prison to be followed by an extended period of probation.

14. Mr. Barkes was deeply impacted by the tragic auto accident identified above; psychological reports relating to his frame of mind, generated as a result of treatment he received in the years after the vehicular homicide, indicate that he was wracked with extreme guilt over the deaths that had resulted from the accident, and he had been diagnosed as suffering from post-traumatic stress disorder resulting from that accident.

15. As a result of the post-traumatic stress disorder and related guilt, depression, and anxiety, certain alcohol and drug problems of Mr. Barkes were exacerbated, and in November of 2003 he attempted suicide by overdosing on pills, although he survived.

16. On information and belief, Mr. Barkes attempted suicide on at least one other occasion while incarcerated at HRYCI.

17. In February of 2004, as part of a sentencing order related to, *inter alia*, certain violations of his probation, Mr. Barkes was ordered as follows by the Family Court of the State of Delaware: to continue certain psychiatric day treatment services he was obtaining from Psychotherapeutic Services, Inc.; to attend at least five meetings of Alcoholics Anonymous per week; to be evaluated for emotional and/or psychological problems; and to take such mental health medication as was prescribed.

18. On September 10, 2004 while receiving care at Chrisitana Care Hospital, Mr. Barkes tried to kill himself using his IV tubing. Mr. Barkes' probation officers were notified.

19. On November 13, 2004 Christopher Barkes was incarcerated at HRYCI for loitering, in violation of his probation.

20. During the initial intake of Christopher Barkes, on November 13, 2004, employees of defendant FCM noted that Christopher Barkes took the following medications: Depakote XR, Seroquel and Effexor XR, whose clinical use is to treat depression and bipolar disorder.

21. Christopher Barkes was not given any of the above-listed medications by FCM personnel on November 13, 2004 or thereafter.

22. The intake form prepared at the time of Mr. Barkes' entry into HRYCI, which was signed by a member of the FCM intake nursing staff, was checked "yes" next to the inquiry, "Have you ever attempted suicide?"

23. The initial period of any incarceration is often a critical time for detecting potential suicides, as noted in the Program Statement of the United States Bureau of Prisons relating to suicide prevention.

24. Upon information and belief, instead of double-bunking Christopher Barkes (which is to say, housing him with a cellmate) or placing him in a suicide watch cell or "Ram room", Christopher Barkes was housed alone in cell F-122.

25. With regard to incarcerated individuals who have a history of suicidal ideation and are believed to be suicidal, the National Commission on Correctional Health Care ("NCCHC") calls for double-bunking and constant supervision.

26. Upon information and belief, Christopher Barkes was not placed under constant supervision nor was his status checked at regularly-scheduled intervals sufficient to prevent his suicide.

27. Upon information and belief, defendants either made provision to Christopher Barkes, or authorized the provision to Christopher Barkes, or failed to prevent the provision to Christopher Barkes, of bedding (such as bed sheets and linens) and/or other items that could be used by a suicidal inmate to harm himself.

28. Upon information and belief, at approximately 11:40 a.m. on November 14, 2004, Christopher Barkes was found unconscious in his cell by prison officials, who determined that he had hung himself with bedsheets.

29. Prison officials and/or FCM personnel attempted to revive Christopher Barkes unsuccessfully.

30. Christopher Barkes was thereafter transferred to Christiana Hospital.

31. The ER referral completed by FCM and/or DOC personnel relating to the transfer of inmate Christopher Barkes to Christiana Hospital expressly noted that Mr. Barkes had a history of bipolar disorder.

32. Christopher Barkes was pronounced dead in Christiana Hospital on November 14, 2004.

33. A default judgment was obtained against First Correctional Medical, Inc. on May 21, 2008.

34. The United States Department of Justice (hereinafter "USDOJ") conducted an investigation of five Delaware prisons, including HRYCI, pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997, which investigation resulted in a report critiquing the provision of medical services in those prisons; this report was transmitted to Delaware Governor Ruth Ann Minner on or about December 29, 2006, and detailed conditions and practices relating to mental health treatment of prisoners and suicide prevention practices that, on information and belief, were prevailing in HRYCI at the time of the suicide of Christopher Barkes.

35. The mental health experts involved in the investigation and preparation of the report, including the State of Delaware's own mental health expert, found substantial deficiencies in the medical and mental health care provided to inmates at, inter alia, HRYCI.

36. At the time of the admission of Christopher Barkes to HRYCI, no qualified medical professional examined him or reviewed his psychological condition; unknown Nurse X,

who on information and belief was no more than a licensed practical nurse, was the only medical professional who saw Mr. Barkes and/or reviewed his answers to intake documents, and as a licensed practical nurse she lacked the requisite training and status to accurately assess Mr. Barkes's mental health condition.

37. On information and belief, the State of Delaware Department of Correction maintains a flawed system for calculating a "mental health screening score" that ignores the qualitative implications of answers provided by inmates in response to mental health screening intake questions, but rather simply counts the number of "positive" responses made by inmates and bases subsequent sensitive categorization of inmates based solely upon such number; on information and belief, the responsibility for calculation of the score is delegated by FCM and the DOC to unqualified individuals.

38. As a result of the ineffective "mental health screening score" procedures described in the preceding paragraph, inmate Christopher Barkes was incarcerated subject to ineffective suicide-prevention procedures, when in fact he was an identifiable suicide risk who should have been carefully monitored until such time as a qualified medical evaluator determined that such monitoring was not necessary.

39. Despite adequate opportunity in the context of pending litigation, the DOC has been unable to consistently identify the precise policy that was in place at HRYCI for inmate suicide prevention at the time relevant to the suicide of Christopher Barkes; on information and belief, the DOC never had, at relevant times, a clear and unambiguous understanding of its own suicide prevention policy, and DOC personnel on the scene at or about the time of the suicide of Christopher Barkes were given ineffective guidance by their superiors as to how to properly handle an inmate such as Mr. Barkes who was at risk for suicide.

40. The DOC and its administration, including defendants Stanley Taylor and Raphael Williams, were aware that FCM was supplying defective medical services and failed to take adequate precautions to prevent the suicide of Christopher Barkes.

## COUNT I

### Violation of Civil Rights under Color of State Law, 42 U.S.C. § 1983 – Cruel and Unusual Punishment (by Karen Barkes as Administratrix against all individual defendants and FCM)

41. Paragraphs 1 to 40 are restated as if more fully set forth herein.

42. The vulnerability of Christopher Barkes to suicide constituted a serious medical need of which defendants knew or should have known, and the actions and/or inactions of defendants, under color of state law, in addressing or failing to address that need, constituted deliberate indifference which could be expected to lead to substantial and unnecessary suffering, injury, and/or death, and which did in fact lead to the death of Mr. Barkes.

43. As a result of the wrongful actions of the defendants, Mr. Barkes suffered attendant physical injuries, mental anguish, pain and suffering, and death, and was deprived of his right to life and his right to be free from cruel and unusual punishment, for which plaintiff Karen Barkes as Administratrix now seeks compensation.

## COUNT II

### Violation of Civil Rights under Color of State Law, 42 U.S.C. § 1983 – Failure to train and/or maintenance of wrongful customs, practices and polices (by Karen Barkes as Administratrix against FCM as a person and as a state actor, and against the individual FCM defendants)

44. Paragraphs 1-43 are restated as if more fully set forth herein.

8

45. In performing its medical services for the DOC, FCM and the individual FCM defendants were state actors performing state functions under color of state law.

46. The death of Christopher Barkes was the direct result of the customs, practices, policies and procedures of FCM and the individual FCM defendants, including but not limited to: a failure to properly train and supervise FCM personnel so as to properly recognize suicidal inmates and how to properly care for inmates identified as making previous attempts on their life, and/or a failure to institute appropriate procedures for the timely transmission of important medical information to appropriate personnel.

47. The aforesaid actions of FCM and the individual FCM defendants amounts to deliberate indifference to the rights of inmates, including the rights of Mr. Barkes.

48. As a result of the wrongful actions of the defendants, Mr. Barkes suffered attendant physical injuries, mental anguish, pain and suffering, and death, and was deprived of his right to life and his right to be free from cruel and unusual punishment, for which plaintiff Karen Barkes as Administratrix now seeks compensation.

### COUNT III

**Violation of Civil Rights under Color of State Law, 42 U.S.C. § 1983 – Failure to train and/or maintenance of wrongful customs, practices and polices (by Karen Barkes as Administratrix against the State of Delaware Department of Corrections and the individual defendant employees of the DOC)**

49. Paragraphs 1 to 48 are restated as if more fully set forth herein.

50. The death of Christopher Barkes was the direct result of the customs, practices, policies and procedures of defendant Stanley Taylor, defendant Raphael Williams, the individual DOC defendants, and the defendant State of Delaware Department of Correction, including but not limited to: a failure to properly train and supervise DOC personnel so as to properly

9

recognize suicidal inmates and how to properly care for inmates identified as making previous attempts on their life, and/or a failure to institute appropriate procedures for the timely transmission of important medical information to appropriate personnel.

51. The aforesaid actions of defendants constitute deliberate indifference to the rights of inmates who come into contact with employees of the DOC and FCM, including the rights of Mr. Barkes.

52. As a direct and proximate result of the actions of the Defendants, Christopher Barkes suffered attendant physical injuries, mental anguish, pain and suffering, and death, and was deprived of his right to life and his right to be free from cruel and unusual punishment, for which plaintiff Karen Barkes as Administratrix now seeks compensation.

## COUNT IV

### Wrongful Death under 10 Del. C. § 3724 (by Karen Barkes individually and Tina Grossman as next friend of Alexandra and Brittany Barkes, against FCM and the individual defendants)

53. Paragraphs 1-52 are restated as if more fully set forth herein.

54. The aforesaid actions of the defendants caused the wrongful death of Christopher Barkes.

55. Plaintiffs are authorized to recover for the damages they have suffered as a result of the wrongful death of Christopher Barkes pursuant to the terms of 10 Del. C. § 3724, and they have suffered severe damages as identified thereunder, including but not limited to the loss of companionship and support of their husband and/or father, Christopher Barkes, with attendant and severe emotional anguish.

## COUNT V

**Survival action under 10 Del. C. § 3701 for medical malpractice (by Karen Barkes as Administratrix against FCM and the individual FCM defendants)**

56. Paragraphs 1-55 are restated as if more fully set forth herein.

57. The aforesaid actions of the defendants constituted medical malpractice, causing great pain and suffering, physical injury, and death to Christopher Barkes.

58. Plaintiff Karen Barkes as Administratrix is authorized to recover for the damages suffered by Christopher Barkes as a result of the medical malpractice of the defendants, pursuant to 10 Del. C. § 3701.

## COUNT VI

**Violation of Civil Rights under Color of State Law, 42 U.S.C. § 1983 – Cruel and Unusual Punishment through a failure to supervise and monitor FCM (by Plaintiffs against individual Defendants Stanley Taylor and Raphael Williams)**

59. Paragraphs 1 to 58 are restated as if more fully set forth herein.

60. The culpability of State actor FCM having been established, Defendants Stanley Taylor and Raphael Williams failed to supervise and/or monitor the activities of FCM in a manner sufficient to insure the proper care of Christopher Barkes in light of his proclivity to suicide, including but not limited to failure to insure the proper evaluation of his psychological condition in light of his responses to intake inquiries advising of his prior suicide attempt, and failure to insure that appropriate suicide-prevention monitoring occurred in the period prior to an evaluation by a fully qualified medical provider.

61. Mr. Barkes's proclivity to suicide constituted a serious medical need of which FCM knew or should have known, and the improper procedures and improper staffing and

flawed training practices of FCM constituted and/or created an excessive risk to the health and safety of inmates such as Mr. Barkes of which Defendants knew or should have known.

62. The actions and/or inactions of Defendants, under color of State law, in addressing or failing to address the needs of Mr. Barkes and the aforesaid shortcomings and failures of FCM constituted deliberate indifference which could be expected to lead to substantial and unnecessary suffering, injury, and/or death, and which did, in fact, lead to the death of Mr. Barkes.

63. As a result of the wrongful actions of the Defendants, Mr. Barkes suffered attendant physical injuries, mental anguish, pain and suffering, and death, and was deprived of his right to life and his right to be free from cruel and unusual punishment, for which Plaintiffs now seek compensation.

## COUNT VII

### Violation of Civil Rights under Color of State Law – Conspiring to violate the civil rights of Christopher Barkes (by Plaintiffs against individual Defendants Stanley Taylor and Raphael Wiliams)

64. Paragraphs 1 to 63 are restated as if more fully set forth herein.

65. Acting under color of state law, Defendants Stanley Taylor and Raphael Williams conspired with personnel of State actor FCM to implement and foster the flawed policies and procedures of FCM and the DOC, and failed to act in a manner sufficient to insure the proper care of Christopher Barkes in light of his proclivity to suicide, and neglected to prevent or aid in preventing the constitutional violations of FCM personnel and DOC personnel who were acting in concert to violate the constitutional rights of Christopher Barkes.

66. Mr. Barkes's proclivity to suicide constituted a serious medical need of which Defendants knew or should have known.

67. The improper procedures, improper staffing practices, and inappropriate training policies and procedures of FCM and DOC personnel constituted an excessive risk to the health and safety of inmates such as Mr. Barkes, and the conspiratorial actions and/or inactions of Defendants, under color of State law, in addressing or failing to address the needs of Mr. Barkes as a result of State actor FCM's flawed policies, procedures, training, and directions, constituted deliberate indifference which could be expected to lead to substantial and unnecessary suffering, injury, and/or death, and which did in fact lead to the death of Mr. Barkes.

68. The aforesaid actions of Defendants Stanley Taylor and Raphael Williams constitute an actionable civil conspiracy under 42 U.S.C. §1983, and further constitute violations of 42 U.S.C. §§1985 and 1986, and further constitute a common law civil conspiracy for an improper purpose.

69. As a result of the wrongful actions of the Defendants, Mr. Barkes suffered attendant physical injuries, mental anguish, pain and suffering, and death, and was deprived of his right to life and his right to be free from cruel and unusual punishment, for which Plaintiffs now seek compensation.

**WHEREFORE,** Plaintiffs demand that judgment be entered in their favor against Defendants on the above claims, including awards of compensatory damages, punitive damages, costs of suit, interest, attorneys' fees under 42 U.S.C. § 1988 and any other appropriate or relevant statutory or common law basis, and such other and further relief as this Court may deem appropriate.

MARTIN & WILSON, P.A.

_____
Jeffrey K. Martin, Esquire (#2407)
1508 Pennsylvania Avenue
Wilmington, Delaware 19806
(302) 777-4681
Attorneys for Plaintiff

THE LAW OFFICE of H.G. FEUERHAKE

_____
Herbert G. Feuerhake, Esq.
521 West Street
Wilmington, Delaware 19801
(302) 658-6101
DE Atty. ID # 2590
herblaw@verizonmail.com
Attorney for Plaintiffs

DATE: June 13, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAREN BARKES, individually; TINA GROSSMAN as next friend of BRITTANY BARKES; TINA GROSSMAN as next friend of ALEXANDRA BARKES; and KAREN BARKES as administratrix of the ESTATE OF CHRISTOPHER BARKES, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C. A. No. 06-104-JJF |
| v. | ) ) | |
| FIRST CORRECTIONAL MEDICAL INC.; STANLEY TAYLOR; RAPHAEL WILLIAMS; CERTAIN UNKNOWN INDIVIDUAL EMPLOYEES OF STATE OF DELAWARE DEPARTMENT OF CORRECTION; CERTAIN UNKNOWN INDIVIDUAL EMPLOYEES OF FIRST CORRECTIONAL MEDICAL, INC., And STATE OF DELAWARE, DEPARTMENT OF CORRECTION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2008 I electronically filed the attached Plaintiffs' Amended Complaint with the Clerk of the Court using CM/ECF which will send notification of such filing to the following attorneys of record below:

Daniel L. McKenty  
Heckler & Frabizzio  
800 Delaware Avenue, Suite 200  
P.O. Box 128  
Wilmington, DE 19899-0128  

Stephani J. Ballard  
Department of Justice  
820 N. French Street, 6th Floor  
Wilmington, DE 19801  

DATE: June 13, 2008

By:  /s/ Jeffrey K. Martin  #2407  
     Jeffrey K. Martin, Esq. (#2407)  
     Martin & Wilson, P.A.  
     1508 Pennsylvania Ave.  
     Suite 1-C  
     Wilmington, Delaware 19806  
     (302) 777-4681  
     jmartin@martinandwilson.com  

By:  /s/ Herbert G. Feuerhake  #2590  
     Herbert G. Feuerhake, Esq. (#2590)  
     521 West Street  
     Wilmington, Delaware 19801  
     (302) 658-6101  
     **herblaw@verizonmail.com**  

Attorneys for Plaintiffs