IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAREN BARKES, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C. A. No. 06-104-JJF-MPT |
| | : | |
| FIRST CORRECTIONAL MEDICAL, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM ORDER

### I. INTRODUCTION

Presently before the court is a motion to compel discovery filed by plaintiffs, Karen Barkes, individually and as administratrix of the estate of Christopher Barkes, Tina Grossman, as next friend of Alexandra Barkes, and Tina Grossman, as next friend of Brittany Barkes (collectively, "Plaintiffs").[1] For the reasons discussed, plaintiffs' motion to compel discovery will be granted in part and denied in part.

### II. BACKGROUND

On February 16, 2006, plaintiffs filed a complaint under 42 U.S.C. § 1983 and Delaware state law regarding plaintiffs' decedent Christopher Barkes.[2] The claims brought against all defendants stem from the suicide of Barkes which occurred on November 14, 2004 during his incarceration and while in the custody of the DOC.[3]

---

[1] See D.I. 126. Other motions were also filed by plaintiffs, specifically a motion for default as to Raphael Williams (D.I. 119), a motion for stay (D.I. 123) and a motion for enlargement of time pursuant to Fed. R. Civ. P. 6(b) (D.I. 134). All of the those motions were resolved during a teleconference with counsel on March 2, 2010 (D.I. 143).

[2] D.I. 1.

[3] Barkes committed suicide within about 24 hours after his incarceration.

Plaintiffs are the surviving members of decedent's family in varying capacities.

Plaintiffs named the State of Delaware Department of Corrections ("DOC"), Stanley Taylor, DOC Commissioner (individually "Taylor), and Raphael Williams, Warden of HRYCI (individually "Williams") (collectively, "State Defendants"), as well as then-DOC medical provider First Correctional Medical, Inc. ("FCM") as defendants. Plaintiffs asserted an Eighth Amendment claim for deliberate indifference to Barkes' serious medical needs, an Eighth Amendment claim for failure to train and/or wrongful customs, practices and policies, and a state law wrongful death claim. All State Defendants prevailed on summary judgment.[4] Plaintiffs filed a motion for reargument, D.I. 64, which was denied.[5]

On May 21, 2008, following a show cause hearing, the court granted plaintiffs' motion for default judgment against FCM.[6] The court also granted plaintiffs leave to amend the pleadings to add new claims "that pertain either to third parties or the parties that were initially in the case that you want to rejoin in the case."[7] Plaintiffs responded by filing an amended complaint against Taylor and Williams including two new counts and several new allegations.[8] Taylor and Williams then moved to strike the amended complaint.[9] The court granted this motion because the amended complaint retained and reasserted claims from the original complaint upon which State Defendants had already prevailed on summary judgment, but granted plaintiffs leave to file a second

---

[4] D.I. 60.
[5] D.I. 70.
[6] D.I. 74.
[7] D.I. 73 at 3-4.
[8] D.I. 75.
[9] D.I. 76.

amended complaint that did not include such claims.[10] Plaintiffs then filed a second amended complaint on April 9, 2009.[11] State Defendants' motion to strike this second amended complaint was denied.[12] After substantial discovery, Taylor and Williams moved to dismiss the second amended complaint under Fed. R. Civ. P. 8(a) and 12(b)(6).[13] The parties completed briefing on this issue on March 23, 2010, and the court heard oral argument on March 31, 2010. After the oral argument, a Report and Recommendation was issued on April 7, 2010, granting in part and denying in part the Taylor and Williams motion to dismiss and granting plaintiffs leave to amend Count V of the second amended complaint.[14] On April 22, 2010, plaintiffs filed their third amended complaint.[15] Not surprisingly, Taylor and Williams responded by filing another motion to dismiss.[16]

## III. MOTION TO COMPEL DISCOVERY

Although Taylor and Williams could argue that in light of the outstanding motion to dismiss, the court should delay in deciding plaintiffs' motion to compel until after the motion to dismiss has been decided. Whether discovery is allowed under the instant circumstances is within the discretion of the court, and it frequently has been this court's practice to permit such discovery. In light of the past history in this matter, and specifically the age of this case and the varying degrees of success (or lack thereof) on

---

[10] D.I. 81.
[11] D.I. 82.
[12] D.I. 92.
[13] D.I. 144.
[14] D.I. 150. No objections were filed to the Report and Recommendation.
[15] D.I. 152.
[16] D.I. 153. Plaintiffs' answering brief is not due until May 24, 2010.

State Defendants' motions to strike and to dismiss, discovery to some degree shall be allowed to continue.

In plaintiffs' motion to compel and State Defendants' answering brief in opposition, both parties, respectively allege that the other has provided late and non-responsive answers to repeated discovery requests.[17] By their motion to compel, plaintiffs seek responses and/or productions related to their (1) second set of interrogatories, (2) second set of production requests, (3) third set of production requests, and (4) December 26, 2009 letter to defense counsel.

### A. Plaintiffs' Second Set of Interrogatories

Plaintiffs filed their second set of interrogatories on November 6, 2009,[18] to which State Defendants responded on December 11, 2009.[19] Objections were raised to interrogatory numbers 15-25 on the grounds that plaintiffs exceeded the permitted number under Fed. R. Civ. P. 33(a)(1).[20] Plaintiffs contend in their motion that any objections to the interrogatories were waived because the objections were not raised within 30 days of the filing date.[21] State Defendants contend that no waiver occurred because plaintiffs' agreed to an extension of time in which to filed the responses.[22] They further contend that, because both remaining State Defendants are retired and

---

[17] D.I. 126 at 2-3; D.I. 137 at 3-4.
[18] D.I. 98.
[19] D.I. 107.
[20] D.I. 98, Ex. A.
[21] *Id.* at 3.
[22] D.I. 137 at 8. The court is forced to disregard this argument as there is nothing on the docket indicating that the parties stipulated to an extension of time, Moreover, State Defendants have not provided any communication between the parties evidencing such an agreement.

Williams was overseas, good cause existed for any delay.[23]

Taylor and Williams are ordered to respond to interrogatory nos. 15-25 because any objections were untimely, and thus, waived. Pursuant to Fed. R. Civ. P. 33(b)(2), "[t]he responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Further, "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."[24] State Defendants contend good cause existed for their delay: a conclusory assertion of good cause based on Taylor and Williams being retired and Williams being overseas is insufficient.[25]

Alternatively, even if the court were to conclude that good cause existed to justify an untimely response, State Defendants nevertheless waived any objection that the permitted number of interrogatories had been exceeded. "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories."[26] Several other jurisdictions recognize that a party waives its objection to excess interrogatories when it answers interrogatories beyond the first twenty-five.[27]

---

[23] *Id.*

[24] Fed. R. Civ. P. 33(b)(4).

[25] *See generally Francis v. Carroll*, C.A. No. 07-015-JJF, 2008 WL 4704591, at *2 (D. Del. Oct. 21, 2008) (finding no good cause for defendants' failure to timely answer interrogatories because "change in employment status is not a valid excuse for [an] untimely answer.").

[26] Fed. R. Civ. P 33(a)(1).

[27] *See Allahverdit v. Regents of Univ. of N.M.*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be[en] propounded should object to all interrogatories or file a motion for a protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond."); *Capacchione v. Charlotte-Mecklenburg Schools,* 182 F.R.D. 486, 492 (W.D.N.C. 1998) (finding a party waived excess interrogatory objection when it

By the courts count, State Defendants responded to thirty-two interrogatories (eighteen in plaintiffs' first set of interrogatories and fourteen in their second set of interrogatories), excluding sub-parts, before raising an objection pursuant to Fed. R. Civ. P. 33(a)(1).[28]

To the extent State Defendants contend that interrogatory nos. 15-12 are, *inter alia*, irrelevant to the surviving claims, redundant, duplicative, wasteful, or otherwise not calculated to elicit discoverable information, the court notes that such objections were not made in response to plaintiffs' second set of interrogatories, and were raised, for the first time, in their opposing brief. Accordingly, State Defendants objection to interrogatory nos. 15-25 have been waived.

### B. Plaintiffs' Second Set of Production Requests

Plaintiffs' second set of production requests were filed on November 6, 2009, to which State Defendants responded on December 11, 2009.[29] State Defendants raised the following objections: request no. 3 as "not directed to State Defendants;" requests nos. 23 and 24 as "vague, overbroad and burdensome;" and request no. 25 as "clearly irrelevant and [ ] not reasonably calculated to lead to admissible evidence." They also object to requests 16-19 by referencing interrogatory responses which contended that plaintiffs exceeded the permitted number of interrogatories. Plaintiffs argue that any objections to the requests were waived because the objections were not filed within 30 days of the service date.

Under Fed. R. Civ. P. 34, "[t]he party to whom the request is directed must

---

responded to interrogatory nos. 21-25 when order was in place limiting the number of interrogatories to twenty).
[28] D.I. 137, Ex. 2; D.I. 126, Ex. A.
[29] *See* D.I. 98, 107.

respond in writing within 3- days after being served." Rule 34 does not explicitly provide for waiver of objection if responses are not timely filed, but waiver may be found in such a circumstance.[30] A finding of waiver is not mandatory, however.[31]

In light of the prior finding herein that State Defendants waived their objections to interrogatory nos. 14, 16, 22 and 23, they are ordered to respond to requests nos. 16-19. Since the court concludes that valid objections were raised to requests nos. 3 and 24, State Defendants are not ordered to respond to these requests. Further, because they indicate in their responses that "all relevant non-privileged documents known and available to Defendants, which are responsive to discovery requests and/or subject to production under Rule 26(a) have been produced, they are not ordered to response to request nos 24 and 25.

## C. Plaintiffs' Third Set of Production Requests

Plaintiffs' third set of production requests was filed on December 2, 2009: State Defendants responded on January 4, 2010.[32] This production request sought Barkes' probation and incarceration records with DOC. State Defendants responded as follows:

> [T]he request is vague, overly broad, and burdensome. Further objection that such documents are not relevant to the claims in the instant case and are not reasonably calculated to lead to admissible evidence. Without waiving this objection, Defendants have previously produce [DOC] records

---

[30] *See* 7 James Wm. Moore, et. al., MOORE'S FEDERAL PRACTICE §34.13[2][a] (3d ed. 2009); *see also SWIMC, Inc. v. Hy-Tech Thermal Solutions, LLC*, C.A. No. 08-084-SLR, 2009 WL 1795177, at *3 (D. Del. June 24, 2009) ("Objections to document requests under Rule 34 must be . . . stated within 30 days to avoid waiver.")

[31] 7 James Wm. Moore, et. al. MOORE'S FEDERAL PRACTICE §34.13[2][a]; *see also Scaturro v. Warren & Sweat Mfg. Co.*, 160 F.R.D. 44, 46 (M.D. Pa 1995 (holding that a party who fails to make a timely objection "may" be found to have waived that objection under Rule 34).

[32] D.I. 101, 116.

of Decedent Christopher Barkes to Plaintiffs.

This request appears to be substantially the same as request no. 12 in plaintiffs' first set of production request, which asked for "[a] full and complete Department of Corrections Record of Christopher Barkes . . . including his incarceration at any DOC facilities and probationary records."[33]  To this request, State Defendants have previously responded as follows:

> All institutional and medical records not previously produced, including those pertaining to Barkes' 1997 incarceration are produced with these responses, with Bates numbers D00152-D00365.[34]

Although the court will not order any further production by State Defendants at this time, it will require them to supplement their response.  Plaintiffs' request is neither vague nor overbroad.  Because it is somewhat unclear from State Defendants' inconsistent responses, it appears that the requested records may already have been produced.  Accordingly, State Defendants shall provide plaintiffs with the Bates numbers for the documents pertaining to this request.

### D.   December 25, 2009 Letter to Defendants' Counsel

By their motion to compel, plaintiffs also seek to obtain all materials identified in a letter sent to defense counsel on December 26, 2009.[35]  Because this letter appears to restate many disputes over materials and information requests in plaintiffs' first and second sets of production request and second set of interrogatories, the court will

---

[33] D.I. 137, Ex. 4.
[34] *Id.*
[35] D.I. 126 at 4.

attempt to address each dispute.[36]

Paragraph 1 seeks responses to plaintiffs' second set of interrogatories. Since the court has concluded herein that State Defendants waived their objections, they are ordered to respond.

Paragraph 2 again seeks production of Barkes' DOC records. As discussed previously, State Defendants are ordered to provide the Bates numbers for documents already produced in response to this request.

Paragraph 3 seeks production of the probationary records of a woman discovered with Barkes on or about September 10, 2004 while both were under the influence of drugs and/or alcohol. Since it does not appear that the probationary records of this woman were ever formally requested by plaintiffs, or fall within the scope of the formal documents requests, production of these records will not be ordered.[37]

Paragraph 24 repeats request no. 24 from plaintiffs' second set of production requests and seeks production of all documents constituting correspondence or communications between the DOC and FCM between 2000-2004 relating to the subject of inmate suicides and/or suicide prevention procedures. As previously discussed, the court concludes that Stated Defendants adequately responded to request no. 24. In another inconsistent response, however, State Defendants' January 20, 2010 letter indicates that it needs "additional time" to respond to this request. To the extent State

---

[36] The court has been provided with a copy of plaintiffs' December 26, 2009 letter, as well as a copy of State Defendants' January 20, 2010 response letter. D.I. 126, Exs. D, F.

[37] This finding by the court does not address whether such records are subject to discovery or covered by any privilege.

Defendants need to supplement their production with additional responsive documents. Such supplemental production shall be done within **twenty-one days** of this Memorandum Order.

Paragraph 5 seeks production of Barkes medical files from HRYCI:  State Defendants replied that the medical files have been produced.  Plaintiffs ask for specific Bates references to these records.  State Defendants are ordered to provide the Bates numbers for these produced records.

Paragraph 6 seeks to take the deposition of Joyce Talley ("Talley"), Taylor's representative on the Medical Review Committee:  State Defendants replied that plaintiffs would need to request an extension of the discovery period in order to take Talley's deposition.  Through their motion to compel, plaintiffs make such a request. Plaintiffs need not obtain leave to take Talley's deposition.  The only scheduling order issued, dated August 28, 2006, is clearly no longer in effect.[38]  In response to plaintiffs' November 16, 2009 letter,[39] stating that the parties anticipated completion of discovery by mid-January, the court entered an Order on November 30, 2009 scheduling a pre-trial conference and trial date.  Thus, no discovery deadline is in place.[40]

Fed. R. Civ. P. 30(a)(1) authorizes a party to depose any person without leave of the court, except as provided in Rule 30(a)(2).  The court is not presently aware that any of the circumstances of Rule 30(b)(2) are applicable.  Accordingly, plaintiffs need not

---

[38] D.I. 17.
[39] D.I. 99.
[40] Since that time, the Pretrial Conference and Trial dates were canceled and the matter was referred to Magistrate Judge Thynge.

obtain leave to depose Talley.[41]

Paragraph 7 seeks all records of the Medical Audit Committee from January 2004 to the middle of 2005.  State defendants advise that such records are no longer available having been purged in 2008.  Plaintiffs request "information as to the scope of the 'purge' of such records."[42]  In the court's view, State Defendants have responded with sufficient specificity, and no further response will be ordered.

Paragraph 8 seeks a copy of the NCCHC special medical audit that bears a date in or around February 2005, as well as all letters from DOC to NCCHC.  State Defendants replied that the information is privileged and not subject to disclosure. Since it does not appear that the audit and letters were ever formally requested by plaintiffs, or fall within the scope of any of the formal document request, the court will not order production of these records.

Paragraph 9 asks State Defendants to "identify the date on which the decision was made to request that the NCCHC conduct a special audit subsequent to the October 23, NCCHC audit.  State Defendants advised that additional time was needed to respond.  They are ordered to provide such response within **twenty-one days** of this Memorandum Order.

Paragraph 10 asks for the identification of the document reflecting the actual suicide prevention policy in place on November 13, 2004, while Paragraph 12 seeks all information constituting guidelines for medical and/or DOC personnel to differentiate

---

[41] It is not clear whether Talley's deposition has been taken.  The court's ruling on this issue is not intended to circumvent Rule 30(b)(2).

[42] D.I. 126 at 6.

between detainees and inmates with regard to the suicide prevention policies.  Although State Defendants replied that the information sought in Paragraph 10 is not relevant to the current claims against them, in yet another inconsistent response, they make the same reply to Paragraph 12, but add that "all suicide prevention policies have been produced . . . ."  Because State Defendants represent that they have already produced such policies, they are ordered to identify which of the produced suicide prevention policies were in effect on November 13, 2004.

Paragraph 13 seeks certain documents and information related to Taylor's testimony before the state legislature.  State Defendants replied that additional time was needed to respond.  As a result, they are ordered to provide their response within **twenty-one days** of this Memorandum Order.

Paragraph 14 seeks the names of all individuals who provided assistance to the Medical Review Committee, the Medical Audit Committee, or the DOC generally from October 2003 to December 31, 2004.  Defendants replied that additional time was needed to respond.  They are ordered to provide such response within **twenty-one days** of this Memorandum Order.

THEREFORE, IT IS ORDERED that:

1. Plaintiffs' motion to compel discovery (D.I. 126) is GRANTED IN PART AND DENIED IN PART as follows:

    a. State Defendants shall respond to interrogatory nos. 15-25 of plaintiffs' second set of interrogatories.

    b. State Defendants shall respond to requests nos. 16-19 of plaintiffs'

  second set of production requests within **twenty-one days** of this Memorandum Order.

c. State Defendants shall make any supplemental production to their response to request no. 24 of plaintiffs' second set of production requests within **twenty-one days** of this Memorandum Order.

d. State Defendants shall provide the Bates numbers for documents produced in response to Paragraph 5 of plaintiffs' December 26, 2009 letter within **twenty-one days** of this Memorandum Order.

e. State Defendants shall respond to Paragraph 9 of plaintiffs' December 26, 2009 letter within **twenty-one days** of this Memorandum Order.

f. State Defendants shall respond to Paragraph 10 of plaintiffs' December 26 letter and identify which of the suicide prevention policies was in effect on November 13, 2004 letter within **twenty-one days** of this Memorandum Order.

g. State Defendants shall respond to Paragraph 13 of plaintiffs' December 26, 2009 letter within **twenty-one days** of this Memorandum Order.

h. State Defendants shall respond to Paragraph 14 of plaintiffs' December 26, 2009 letter within **twenty-one days** of this Memorandum Order.

Date:  May 17, 2010         /s/ Mary Pat Thynge
                UNITED STATES MAGISTRATE JUDGE