IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAREN BARKES, et al., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | C. A. No. 06-104-JJF-MPT |
| : | |
| FIRST CORRECTIONAL MEDICAL, : | |
| et al., : | |
| : | |
| Defendants. : | |

**REPORT AND RECOMMENDATION**

**I. INTRODUCTION**

The court now considers defendants' Motion to Dismiss plaintiffs' Third Amended Complaint. For the reasons that follow, the court recommends defendants' motion be denied.

**II. BACKGROUND**

On February 16, 2006, plaintiffs filed a complaint under 42 U.S.C. § 1983 and Delaware state law regarding decedent Christopher Barkes.[1] Barkes committed suicide at the Howard R. Young Correctional Institution ("HRYCI") on November 14, 2004. Plaintiffs are the surviving members of decedent's family in varying capacities.

Plaintiffs named the State of Delaware Department of Corrections ("DOC"), Stanley Taylor, DOC Commissioner, and Raphael Williams, Warden of HRYCI (collectively, "State Defendants"), as well as then-DOC medical provider First Correctional Medical, Inc. ("FCM") as defendants. Plaintiffs asserted an Eighth Amendment claim for deliberate indifference to Barkes' serious medical needs, an

---

[1] D.I. 1.

Eighth Amendment claim for failure to train and/or wrongful customs, practices and policies, and a state law wrongful death claim. All State Defendants prevailed on summary judgment.[2]

On May 21, 2008, following a show cause hearing, the court granted entry of default judgment against FCM.[3] The court also granted plaintiffs leave to amend the pleadings to add new claims "that may pertain either to third parties or the parties that were initially in the case that you want to rejoin in the case."[4] Plaintiffs responded by filing an Amended Complaint against Taylor and Williams including two new counts and several new allegations.[5] Taylor and Williams then moved to strike the Amended Complaint.[6] The court granted this motion because the Amended Complaint retained and reasserted claims from the original Complaint upon which State Defendants had already prevailed on summary judgment, but granted plaintiffs leave to file a second amended complaint that did not include such claims.[7] Plaintiffs then filed their Second Amended Complaint on April 9, 2009.[8] Defendants' Motion to Strike the Second Amended Complaint was denied.[9] After substantial discovery, Taylor and Williams moved to dismiss the Second Amended Complaint under Fed. R. Civ. P. 8(a) and 12(b)(6).[10] The court granted this motion while giving plaintiffs leave to amend Count V

---

[2] D.I. 60.
[3] D.I. 74.
[4] D.I. 73 at 3-4.
[5] D.I. 75.
[6] D.I. 76.
[7] D.I. 81.
[8] D.I. 82.
[9] D.I. 92.
[10] D.I. 144.

only.[11]  The Third Amended Complaint is the subject of another Motion to Dismiss.[12]

## III. DISCUSSION

### A. Standard of Review

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[13]  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[14]  A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[15]  While the court draws all reasonable factual inferences in the light most favorable to plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[16]

---

[11] *See* D.I. 150; D.I. 158.

[12] D.I. 153.

[13] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[14] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[15] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotations and citations omitted).

[16] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (rejecting "unsupported conclusions and unwarranted inferences"); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

To survive a motion to dismiss, plaintiffs' factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."[17]  Plaintiffs are therefore required to provide the grounds of their entitlement to relief beyond mere labels and conclusions.[18]  Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[19]  A claim has facial plausibility when a plaintiff pleads factual content sufficient for the court to draw the reasonable inference that defendant is liable for the misconduct alleged.[20]  Once stated adequately, a claim may be supported by showing any set of facts consistent with the allegations in the complaint.[21]

### B. Sufficiency of the Complaint

Count V of the Third Amended Complaint (the only count at issue here) alleges that Commissioner Taylor and Warden Williams violated the Eighth Amendment and thereby 42 U.S.C. § 1983 by exhibiting deliberate indifference to decedent Barkes' particular vulnerability to suicide as well as the general risk of prison suicides created by First Correctional Medical's improper staffing, training, and procedures.[22]

To succeed on a claim against supervisors in their individual capacities based on

---

[17] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

[18] *Twombly*, 550 U.S. at 555.

[19] *Id.* at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[20] *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

[21] *See Twombly*, 550 U.S. at 563 (citations omitted).

[22] *See* D.I. 152 at ¶¶ 53-58.

prison policy or practices, plaintiffs must identify a specific policy or practice that the supervisors failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.[23] In the context of prison suicides, the Third Circuit has explained that a plaintiff must: (1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred; and (2) demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives.[24]

The court dismissed Count V as it appeared in the Second Amended Complaint because it found plaintiffs' allegations that Taylor and Williams were aware of *general* defects in FCM's medical services insufficient to support an inference that they were also aware of *particular* defects in FCM's suicide screening and prevention policies.[25] At least with regard to plaintiffs' claim based on the failure to properly train, supervise, and monitor FCM, this defect has been cured. While the Second Amended Complaint stated only that "the DOC and its administration . . . were aware that FCM was supplying defective medical services," the Third Amended Complaint alleges more precise knowledge by Taylor and Williams of the risk of suicide in Delaware prisons.

---

[23] *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).
[24] *Colburn v. Upper Darby Tp.*, 946 F.2d 1017, 1030 (3d Cir. 1991).
[25] *See* D.I. 150 at 10-11.

Specifically, the Third Amended Complaint alleges defendants were aware that: (1) the suicide rate in Delaware prisons was above the national average; (2) jailed detainees are more at risk for suicide than incarcerated individuals; (3) the first 24 hours of a jailed detainee's detention present a heightened risk of suicide; (4) Delaware prisons house both detainees and inmates; and (5) there was only one suicide prevention policy applicable to both populations, with no enhanced protections applicable to detainees like Barkes. Viewing these well-pleaded facts in the light most favorable to plaintiffs suggests that Taylor and Williams were aware of a generally elevated risk of suicide in Delaware prisons and a particularly heightened risk of suicide for jailed detainees, especially in their first 24 hours of detention. Knowing this, and also knowing that FCM was supplying generally defective medical services, Taylor and Williams failed to alter or amend the applicable suicide prevention policy–a policy they purportedly knew provided no additional safeguards for newly jailed detainees.

Plaintiffs have also identified particular suicide screening deficiencies at HRYCI, the alteration of which might have saved Barkes' life. These include: (1) reliance on an out-of-date intake form from the National Commission on Correctional Health Care that the organization disavowed in its 2003 "Standards for Health Services in Prisons"; (2) an initial mental health evaluation that ignored the qualitative implications of responses to individual questions (including "Have you ever attempted suicide?") and instead based sensitive categorization of inmates solely on the total number of "positive" responses given; (3) failure to administer indicated medications; and (4) failure to check DOC medical files and records for evidence of suicidal behavior at the time of detention.

With their Third Amended Complaint, then, plaintiffs have alleged sufficient
6

factual matter for this court to reasonably infer that Taylor and Williams were aware of and indifferent to a heightened risk of suicide for individuals in Barkes' situation created by defective suicide prevention and screening policies, and that Barkes' injury is attributable to these defective policies. Because plaintiffs have "nudged their claims across the line from conceivable to plausible,"[26] this court recommends defendants' Motion to Dismiss the Third Amended Complaint be denied.

## IV. ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, it is recommended that:

(1) Defendants' Motion to Dismiss the Third Amended Complaint (D.I. 153) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.[27] The objections and response to those objections are limited to ten (10) pages each.

The parties are directed to the court's standing Order in Non-Pro Se Matters for Objections Filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: July 27, 2010                    /s/ Mary Pat Thynge
                                        UNITED STATES MAGISTRATE JUDGE

---

[26] *Twombly*, 550 U.S. at 570.
[27] FED. R. CIV. P. 72(b).